**Larry David PACK, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00007–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted March 28, 2007.

Decided April 25, 2007.

James P. Wheeler, Sr., Quitman, for appellant.

David Glickler, Assistant Attorney General, Criminal Law Enforcement Defense Div., Austin, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In 2004, when he was still a Wood County Justice of the Peace, Larry David Pack testified before a Wood County grand jury concerning an allegation that, a week before the 2000 political primary election, Pack had falsely reported to Child Protective Services (CPS)[1] that Joe Gidney, a primary candidate for constable in Pack's precinct, had sexually abused a child. An official investigation into the report of misconduct by Gidney determined that no official action against Gidney was warranted.

---

1. Child Protective Services is a division of the Texas Department of Family and Protective Services. At the time of the events in question, the department's official name was the Texas Department of Protective and Regulatory Services.

Pack was not charged with filing a false report.

Pack's grand jury testimony, however, resulted in Pack's conviction for aggravated perjury, the subject of this appeal. The charge was that Pack falsely testified to the grand jury that an administrator at the Hawkins School[2] telephoned him to report the alleged abuse.

Pack raises seven issues on appeal. Because we find the evidence legally and factually insufficient to support Pack's conviction, we reverse the judgment of the trial court and render a judgment of acquittal.

The chain of events culminating in Pack's prosecution for aggravated perjury began with a telephone call Pack made on or about March 9, 2000, a week before the political primary. In the presence of Dona Jordan, Pack called the CPS hotline, alleging Gidney had sexually abused A.G., a child.[3] Jordan testified that, after Pack concluded his call to CPS, he laughed and then stated, "I'll teach that son-of-a-bitch to mess with me."

Four years later, Pack provided sworn testimony to the grand jury. Pack's grand jury testimony was not recorded.[4] Marcus Taylor, the Wood County District Attorney at the time, testified that the grand jury was investigating a claim made by Gidney

that Pack committed the misdemeanor offense of official oppression or official misconduct. The grand jury did not indict Pack. A subsequent investigation by Texas Ranger Kenny Ray concluded that Pack had made false statements in his grand jury testimony.

At Pack's perjury trial, the State presented evidence from nine persons present for Pack's grand jury testimony June 23, 2004.[5] As discussed more extensively below, these nine witnesses presented varying versions of Pack's testimony to the grand jury—at least some versions suggesting that Pack claimed to have received a call from an administrator at Hawkins School who asked Pack to report the alleged abuse. In an attempt to prove Pack's testimony was false, the State presented testimony from eight employees of Hawkins School. All eight testifying employees denied reporting the alleged abuse to Pack. Following a guilty verdict, the jury assessed a sentence of ten years' imprisonment, but recommended community supervision. The trial court placed Pack on community supervision for five years.

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d

2. It appears that, as used by residents of the area, "Hawkins School" is an inclusive term which collectively refers to all of the schools operated by the Hawkins Independent School District and located on the same campus: Hawkins Elementary School, Hawkins Middle School, and Hawkins High School. We use the term as we understand the locals use it.

3. Dan Snell, an employee with the Statewide Intake Division of CPS, testified he received a call from a person who identified himself as Larry Pack. Snell testified the person reported Gidney was abusing A.G., a child. At trial, A.G. denied that Gidney had ever abused her. A.G. testified Gidney had been investigated

for allegedly abusing her twice—the previous investigation occurring when A.G. was "very little."

4. Although Article 20.012 of the Texas Code of Criminal Procedure requires that grand jury testimony be recorded, such was not the ordinary practice in Wood County. *See* TEX. CODE CRIM. PROC. ANN. art. 20.012 (Vernon 2005).

5. Ray testified that Richard Hicks, a grand juror present at the grand jury meeting, was not medically able to attend court. The State claims nine of the ten people present at the grand jury proceedings testified.

560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

■ In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *Roberts v. State*, 220 S.W.3d 521 (Tex.Crim.App. 2007); *see Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim.App.2006); *Johnson*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996). Though the mere existence of an alternative reasonable hypothesis does not render the evidence insufficient, we must consider its existence when determining the sufficiency of the evidence. *See Harris v. State*, 133 S.W.3d 760, 763–64 (Tex.App.-Texarkana 2004, pet. ref'd). Though, in reviewing factual sufficiency, we may second-guess the jury

to a limited degree, our review should still be deferential, and we must reach "a high level of skepticism about the jury's verdict" before we can reverse for factual insufficiency. *Roberts*, 220 S.W.3d at 524.

■ To establish aggravated perjury, the State must prove that the defendant, (1) with intent to deceive and (2) with knowledge of the statement's meaning, (3) made a false statement under oath, (4) that was required or authorized by law to be made under oath, (5) in connection with an official proceeding, and that (6) the false statement was material. TEX. PENAL CODE ANN. § 37.03 (Vernon 2003); *McCullar v. State*, 696 S.W.2d 579, 581 (Tex.Crim.App. 1985); *Kmiec v. State*, 91 S.W.3d 820, 822 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). A statement is material "if it could have affected the course or outcome of the official proceeding." TEX. PENAL CODE ANN. § 37.04(a) (Vernon 2003); *see Mitchell v. State*, 608 S.W.2d 226, 228 (Tex.Crim.App. 1980). A mistaken belief that the statement was not material is not a defense.[6] TEX. PENAL CODE ANN. § 37.04(b) (Vernon 2003). While the State met its burden of proof with most of the above elements,[7] the State failed to prove that Pack made a false statement. While substantial evidence demonstrated Pack's misconduct, even hubris, the State failed to prove beyond a reasonable doubt that Pack com-

---

**6.** Pack alleges the trial court erred in submitting to the jury the issue of whether the statement was material. Pack cites *Yarbrough v. State*, 617 S.W.2d 221, 228 (Tex.Crim.App. 1981), as authority for the proposition that the issue of whether a statement is material is a question of law. *See* TEX. PENAL CODE ANN. § 37.04(c) (Vernon 2003). But the United States Supreme Court has held whether a statement is material must be decided by the jury. *United States v. Gaudin*, 515 U.S. 506, 522, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (finding refusal to submit issue of materiality unconstitutional); *Ward v. State*, 938 S.W.2d 525, 530 (Tex.App.-Texarkana 1997, pet.

ref'd). The trial court did not err in submitting the issue of materiality to the jury.

**7.** Taylor testified that Pack made the statement under oath. The jury could reasonably infer that the proceedings were official and the oath was authorized by law from the evidence. Given that no indictment was issued by the grand jury and given that the testimony was directly related to the offense being investigated, a rational juror could conclude that, beyond a reasonable doubt, the statement was material.

mitted aggravated perjury. The State failed to carry its burden of proof in two respects: (1) in failing to prove that Pack testified a Hawkins School administrator reported abuse to him and (2) in failing to prove that no Hawkins School administrator reported abuse to Pack.

### (1) The State Failed to Prove Pack Testified a Hawkins School Administrator Reported Abuse to Him

Pack claims the only charge supported by the evidence is that he failed to remember, nearly four years later, who had called him. According to Pack, the questioning in front of the grand jury was not precise enough to justify a conviction for perjury, and the State could not prove perjury by piecing together statements of the defendant and other witnesses. When viewed in a light most favorable to the prosecution, the State presented legally sufficient evidence of testimony by Pack that an administrator at Hawkins School reported the alleged abuse to him. The evidence, when viewed in a neutral light, however, is factually insufficient.

The State presented evidence from nine persons present at Pack's June 23, 2004, grand jury testimony. Those witnesses testified as follows, in pertinent part:

[District Attorney Marcus Taylor]: [Pack] specifically mentioned he received a call from David Ledkins and from a school counselor whose name he couldn't recall.

. . . .

[Grand Juror Thomas Metcalf]: He wasn't sure. It was either the principal or the vice-principal or somebody of that nature.

. . . .

[Metcalf]: He thought it was David Ledkins.

. . . .

[Grand Juror Arthur Sager]: [W]e were led to believe it was some official within the school district, maybe a principal or counselor or something that called him.

. . . .

[Grand Juror William Hampton]: Someone. He didn't remember if it was a school counselor or a principal. He thought it might have been David Ledkins.

. . . .

[Grand Juror John Lafferty]: He thought to the best of his recollection it was someone from—some people from school. He thought it was a counselor or perhaps a principal. I believe it was a principal, Mr. Lincolns, Ledkins. I can't recall his name. It was something like that.

. . . .

[Grand Juror Ira Tunnell]: He said that he received the call from an administrator at the school.

. . . .

[Tunnell]: He thought it was the high school principal.

. . . .

[Grand Juror Jimmie R. Dozier]: I think Mr. Pack, you know, indicated that he had received a complaint either from a school administrator or a school principal that Mr. Gidney—well, I guess that [A.G.] had indicated to someone at the school that she was being abused by . . . Mr. Gidney.

. . . .

[Foreperson Beverly Gunn]: [H]e said it was an administrator or a counselor and I asked him who that might have been and that's when he said to us, "Mr. Ledkins."

. . . .

[Grand Juror Bettie Morgan]: [H]e said that an administrator had called him

about a situation about a young lady at the school that Mr. Gidney was having some type of relationship with.

[Assistant Attorney General]: And you said that "an administrator." Was it an administrator at the school?

[Morgan]: Well, that was his—that's what he said.

Gunn testified that she had no doubt Pack testified he talked to an administrator. When asked if Pack testified he had been called by "an administrator with the Hawkins School," Sager responded in the affirmative. Dozier testified that Pack had been evasive concerning who had reported the abuse to Pack.

Pack contends the questioning did not constitute the precise questioning required to commit perjury. *See Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) (construing federal perjury statute). In *Bronston,* the United States Supreme Court held that, regardless of the defendant's intent to deceive or mislead, a witness who speaks the literal truth is not guilty of perjury under the federal perjury statute. *Id.* at 358–59, 93 S.Ct. 595. *Bronston* held specific questioning is required when a witness' testimony is facially true although misleading. *Id.*

Pack cites *Bell v. State,* 26 S.W.3d 516, 523 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd), for the proposition that perjury cannot be proven by piecing together a statement by the defendant with the statements of others. In *Bell,* the State alleged the defendant, a district judge presiding over a trial in which Chevron was a party, stated, in a recorded telephone call to Williamson, "Chevron needs to know I am its friend," and later denied making the statement under oath. *Id.* Although the State admitted the defendant never expressly said to Williamson, "Chevron needs to know I am its friend," the State argued

the defendant "committed perjury by adding together three statements: (1) the appellant told Williamson he was Chevron's friend; (2) Williamson told the appellant that she would report the conversation to Chevron; and (3) the appellant said 'okay' after Williamson said she would report the conversation to Chevron." *Id.* The court disagreed that the appellant committed perjury while noting, "[T]he State cites no authority for the proposition that perjury can be committed by piecing together a statement by the defendant with the statements of others." *Id.*

Viewed in a light most favorable to the State, the evidence is legally sufficient to prove testimony by Pack that an administrator at Hawkins School asked him to report the alleged abuse. *Bronston* did not require specific questioning in general, but rather held specific questioning is required when a witness' testimony is facially true although misleading. In *Bell,* the State was attributing to the defendant a statement made by Williamson and assented to by the defendant. *Bell* is distinguishable from the current case because a statement of another has not been attributed to Pack. Viewed in a light most favorable to the prosecution, the State is not piecing together a statement by Pack with the statements of others. A rational juror could have concluded that, beyond a reasonable doubt, Pack testified an administrator asked him to report the alleged abuse.

We conclude, however, that the evidence—when viewed in a neutral light—is factually insufficient. Although *Bronston* and *Bell* could be distinguished from the current case, they are illustrative of the burden the State is required to meet when prosecuting someone for perjury. Notwithstanding the lack of a recording of Pack's testimony, the State was obligated to prove specifically what Pack testified to.

When viewed in a neutral light, the State failed to prove Pack's guilt beyond a reasonable doubt. Similar to *Bronston*, the State failed to show Pack's testimony was facially untrue. If Pack merely suggested an administrator might have called him, his testimony, while misleading, was not facially untrue. The evidence does not establish what questions were asked of Pack or the specifics of Pack's response. Similar to *Bell*, the State's theory requires the fact-finder to attribute to Pack the conclusions reached by the grand jurors as to the contents of Pack's testimony.

Although the State presented sufficient evidence that Pack intended to mislead the grand jury, the State was required to prove that Pack offered facially false testimony. The testimony of the grand jurors presents considerable evidence that Pack was unsure of who called him. When asked what Pack's first answer was, Metcalf responded, "Most of the time it was that he didn't recall." Metcalf denied that Pack was pressed for an answer or that the colloquy was confrontational. Hampton testified Pack claimed he "didn't remember exactly who called." Lafferty testified Pack was "having a difficult time recalling [who had called him] since it had occurred some years before." Lafferty also testified he did not "recall [Pack] issuing a statement that anyone actually called him" and that he concluded Pack "was not positive who called him." Tunnell did not recall Pack ever mentioning a name of who he thought may have been the person who called him. According to Tunnell, Pack was clear that he received a call. Dozier testified Pack was unsure who called him. Gunn testified that Pack "first said he was unsure," but later named Ledkins as someone that might have called him. Gunn testified Pack was responding to her ques-

tion concerning whether Pack "had an idea" who called him. Morgan testified that it was clear Pack could not remember who called him. None of the witnesses testified to the precise wording of the questions asked of Pack or the precise wording of Pack's responses. There are nine versions of what Pack testified to. Although most of the witnesses testified they recalled Pack claiming an administrator reported the abuse to him, the witnesses merely testified to their vague recollections of the general thrust of Pack's testimony.

Proof that Pack merely suggested an administrator reported the alleged abuse to him is not sufficient to prove aggravated perjury. Further, proof that Pack's testimony misled the jury into believing an administrator from Hawkins School reported the allegations to Pack is also insufficient. The State was required to prove, beyond a reasonable doubt, that Pack testified an administrator from Hawkins School reported the allegations. When viewed in a neutral light, the evidence is so weak that the verdict is clearly wrong and manifestly unjust. Even applying the appropriate high-level-of-skepticism standard[8] as we review the jury verdict to determine whether it was supported by factually sufficient evidence, we hold that the evidence is factually insufficient that Pack testified an administrator at Hawkins School asked him to report the alleged abuse.

*(2) The State Failed to Prove No Hawkins School Administrator Reported Abuse to Pack*

Pack argues that the State's claim that no administrator from Hawkins School called Pack is merely an unproven assumption. We agree. The State found itself in

---

**8.** *See Roberts,* 220 S.W.3d at 524 (appellate court must reach "high level of skepticism about the jury's verdict" before reversal for factual insufficiency warranted).

the unenviable position of having to prove a negative beyond a reasonable doubt: that no Hawkins School administrator called Pack. The State, though, proved only that *some* administrators at Hawkins School did not call Pack to report abuse. The State failed to prove who qualified as an administrator at Hawkins School. Without proof of the universe of Hawkins School administrators, a rational juror could not logically conclude that *no* administrator from Hawkins School asked Pack to report the abuse.

The State asserts that it presented all potential witnesses who qualified as administrators at Hawkins School.[9] Regardless of the truth or falsity of the State's assertion, the question before us is whether it was proven by the evidence. Eight State's witnesses denied reporting the alleged abuse to Pack: David Ledkins (elementary school principal),[10] Richard Walla (middle school principal), Cornelia Blair (high school counselor), Judy Humphrey (the alleged victim's social studies teacher), Sue Holm (the alleged victim's math teacher), Vanessa Choice (assistant high school principal), Kevin Whitman (high school principal), and Marsha Hagin (superintendent in March 2000). But the State has not directed us to any evidence in the record, and we have found none, establishing the list of all administrators of Hawkins School.

From our own extensive review of the record, we have not discovered sufficient evidence of how many administrators were employed at Hawkins School or who those administrators were. Ledkins provided some testimony concerning the composition of the administration at Hawkins School. Ledkins testified that Hawkins School, although a small school district, has approximately 100 employees. Hawkins Elementary School, Hawkins Middle School, and Hawkins High School are all located on the same campus. Hawkins School does not have an assistant superintendent. Hawkins School has a superintendent, three principals, and at least two counselors. Ledkins testified that, at the time of trial, Hawkins School had a counselor for the elementary school and another counselor for grades six through twelve. Ledkins "believed" that would "have been the case in 2000." Only one of the two school counselors testified.[11] The record does not contain any evidence concerning whether the counselor who did not testify reported the alleged abuse to Pack.

When asked who he would say are administrators at Hawkins School, Ledkins named the superintendent, the special programs coordinator, the three principals, and possibly the athletic director. The record does not contain evidence that neither the "special programs coordinator" nor the "athletic director" reported the allegations to Pack. Further, the record

9. The State also argues that Pack failed to prove someone called him. This argument, of course, is contrary to the presumption of innocence and the appropriate burden of proof.

10. Ledkins was also a grand juror on the grand jury before which Pack was accused of committing aggravated perjury. However, Ledkins was not present on the day Pack testified.

11. Ledkins testified he believed Hawkins School had two counselors at the time of the

events in question. Blair, the counselor at Hawkins School for grades six through twelve in March 2000, testified there was another part-time counselor in March 2000. The record does not establish the identity of the part-time counselor. The record suggests the part-time counselor no longer worked at Hawkins School. Mr. Unke, currently a part-time counselor at Hawkins School, was not employed by the district at the time Pack made the report to CPS.

affirmatively establishes that Hawkins School has at least one assistant principal. Choice, the assistant high school principal, testified at trial. Ledkins was never asked whether Hawkins School had any other assistant principals or, if so, how many assistant principals there were. Because there is clearly at least one assistant principal at Hawkins School, Ledkins' testimony is clearly incomplete.

Even assuming Ledkins' list is complete, there is no evidence in the record from or concerning the "special programs coordinator," the athletic director, or one of the counselors. In the absence of such proof, the State merely proved that *some* administrators at Hawkins School did not report abuse to Pack.

At oral argument before this Court, the State argued the evidence did establish that no administrator called Pack because (1) an administrator from each of the three schools at the Hawkins School campus denied calling Pack, (2) reporting the incident to Pack would violate the school's policy, (3) Ray testified he interviewed all administrators at Hawkins School, and (4) Pack was inconsistent concerning who reported the incident.

While an administrator at each of the three schools on the Hawkins School campus did deny reporting the abuse to Pack, a rational juror could not conclude, beyond a reasonable doubt, based on the evidence in the record, that *no* administrator requested Pack to report abuse to CPS. One cannot logically conclude, beyond a reasonable doubt, from the testimony of only some of the administrators at Hawkins School, that no administrator called Pack.

The State presented evidence that the standard procedure at Hawkins School was to report alleged abuse to a school administrator. Blair testified the standard procedure when an employee of the school obtains evidence of potential abuse is to make a report to the principal. According to Blair, she would have known if a report of potential abuse had been made to "anyone else" at Hawkins School. Humphrey testified the standard procedure is for an employee to report the potential abuse to an administrator or counselor. Hagin testified it would be a violation of school policy to report potential abuse to Pack. Sue Holm acknowledged a person could report alleged abuse himself or herself, but testified she would make a report to the principal. Ledkins testified that, as a principal, he would normally inform the superintendent if he reported any allegations of abuse.[12] There is only a weak correlation between a standard policy and proof beyond a reasonable doubt that the policy was followed. Proof that Pack's version of events would violate the school's standard policy is not sufficient for a rational juror to reach the verdict in question.

Ray testified he interviewed "[c]urrent and former" administrators at Hawkins School, as well as "everyone implicated in making that phone call" and some teachers. Ray admitted he did not interview all of the teachers at Hawkins School, but was never asked if he interviewed all the administrators. Ray testified he failed to find, in his investigation, anyone who admitted making an abuse report to Pack. Ray testified he interviewed eight persons who qualified as an administrator, counselor, principal, or teacher. We note that, if two counselors are added to the list provided by Ledkins, the total comes to eight. This number, however, does not include

---

12. We also note that Ledkins testified A.G.'s school records do not contain any reference to the allegations in question. According to

Blair, such allegations might or might not be entered into a student's personal records, depending on the facts of the case.

any assistant principals.[13] Ray did not specify which eight individuals he interviewed. The evidence that Ray interviewed eight persons does not establish that he interviewed all the administrators. Even if Ray's testimony that none of the individuals he interviewed admitted reporting abuse to Pack is competent evidence, the record fails to establish Ray interviewed all the administrators at Hawkins School.

Finally, the fact that Pack was inconsistent concerning who reported the incident does not establish the falsity of his testimony beyond a reasonable doubt. The record does contain evidence that Pack's testimony before the grand jury differed from his original version of the events. Jordan testified that Pack claimed, during the telephone conversation with CPS, that he had received numerous complaints from neighbors. Snell testified that Pack indicated the report had come from "[p]eople who know the family, but would not disclose the identity of the persons that gave him the information." Sherry Lynn, the CPS Specialist who investigated Pack's allegations, testified that Pack refused to identify to her who had made the report to him and claimed the person or persons wanted their identity to remain confidential. Pack, though, was not charged with making a false report. The fact that Pack told inconsistent stories is not sufficient evidence to allow one to conclude that,

beyond a reasonable doubt, Pack's testimony was false as charged.

While the State may have presented testimony of all of the administrators from Hawkins School as it alleges, the evidence fails to reflect that fact. Without presenting evidence of the universe of administrators at Hawkins School and evidence that none of those persons reported the alleged abuse to Pack, a rational juror could not conclude beyond a reasonable doubt, even when viewed in a light most favorable to the prosecution, that Pack gave the false testimony as charged. Further, the evidence, viewed in a neutral light, is so weak that the jury's verdict is clearly wrong and manifestly unjust. The evidence of the falsity of Pack's testimony is legally and factually insufficient.

Because we have found the evidence to be insufficient, it is not necessary for us to decide Pack's remaining points of error.[14] We reverse the judgment of the trial court and render a judgment of acquittal.

---

**13.** We also note Ray did interview Unke, who was not employed by Hawkins School in March 2000. The record is not clear concerning whether Unke was included in the above-mentioned eight individuals. Ray testified he interviewed Humphrey, A.G.'s social studies teacher, and Holm, A.G.'s math teacher. The record is not clear whether these interviews were included in the above-mentioned eight interviews.

**14.** In his remaining points of error, Pack argues the trial court erred when it allowed the State, over defense objection, to delete language in the indictment during trial; when the trial court refused the defense's request for ten days to respond to the deletion; when the trial court did not suppress the State's evidence of Pack's testimony before the grand jury when the testimony was not recorded pursuant to Article 20.012 of the Texas Code of Criminal Procedure; and when the trial court determined by letter whether the grand jurors, who witnessed Pack's testimony, desired to discuss the case with defense counsel rather than allowing defense counsel to contact the former grand jurors directly.