Opinion issued May 1, 2008









 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00476-CR

____________


SUDAN EL-AMIN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 10596






MEMORANDUM OPINION

 A jury found, appellant, Sudan El-Amin, guilty of the offense of possession
with intent to deliver a controlled substance, namely, cocaine, weighing 400 grams
or more, (1) and assessed her punishment at confinement for twenty-five years and
imposed a $10,000 fine. In two points of error, appellant contends that the evidence
is factually insufficient to support her conviction and the trial court erred in admitting
into evidence appellant's written statement, "which was taken in violation of article
38.22" of the Texas Code of Criminal Procedure. (2)

 We affirm.

Factual and Procedural Background

 Houston Police Department Officer M. Todd testified that, on February 28,
2006, she learned that appellant, after the United Kingdom had denied her entry into
London, was flying back to Houston after a layover in Atlanta and was possibly
carrying a large amount of cocaine. After arriving in Houston at approximately 7:40
p.m., appellant went to the baggage claim area, where a man, subsequently identified
as Cheetee Benson, joined her. Todd had been informed that appellant would have
three suitcases, yet only one suitcase arrived at the baggage claim. When appellant
discovered that she was missing the other two suitcases, appellant started to "panic,"
nervously dialing numbers on her cellular telephone. While Benson left with the one
suitcase, appellant went to the baggage claim office, and, after she exited the office,
Todd approached her.

 Officer Todd explained that appellant still seemed nervous and that, after she
asked for some identification, appellant produced a fake driver's license before she
produced her actual driver's license. Appellant confirmed to Todd that she had
traveled with three suitcases, but denied that she packed the suitcases herself,
explaining that she was carrying the suitcases for someone else and that she was only
carrying "toys." When asked what happened to her suitcase, appellant explained that
"Joe" had taken the suitcase and left. Todd asked for appellant's consent to search
her suitcase. Appellant unhesitatingly agreed, even after Todd informed her that she
could refuse to grant Todd such consent. (3)

 After Officer Todd's fellow police officers had Benson return with appellant's
suitcase, appellant identified the suitcase as belonging to her and again granted police
officers consent to search it. Todd noted that appellant's suitcase contained a tag
which bore her name. Inside of the suitcase, Todd found a DVD player, female
clothing, which Todd stated was "consistent" with appellant's clothing size, and two
game boxes. Todd observed that the game boxes felt unusually heavy and that one
game box was unwrapped, while the other game box appeared as if a person other
than the manufacturer had wrapped it. After police officers opened the unwrapped
game box, Todd saw that it contained bundles of cocaine. Appellant remained
nervous after Todd's discovery, but she did not appear as if she was shocked, even
though testing subsequently revealed that the suitcase contained approximately
twenty-five pounds of cocaine.

 Officer Todd placed appellant under arrest and informed her of her legal
rights, verbatim, from a blue card that the district attorney's office issues to police
officers. Todd stated that, after she had read appellant her legal rights, she asked
appellant if she understood her rights, and appellant replied, "yes." Upon their arrival
at the police station, appellant accompanied Todd to her cubicle because appellant
had specifically informed her that she wanted to give the "truth" by providing a
statement. Before Officer Todd took appellant's statement, entitled,
"VOLUNTARY STATEMENT OF PERSON IN CUSTODY," Todd typed the
following "written warnings" onto the top of the front page of the statement itself:

1. You have the right to remain silent and not make any statement
at all and that any statement you make may be used against you
and probably will be used against you at trial.


2. Any statement you make may be used as evidence against you in
court.


3. You have the right to have a lawyer present to advise you prior to
and during any questioning.


4. If you are unable to employ a lawyer, you have the right to have
a lawyer appointed to advise you prior to and during questioning.


5. You have the right to terminate this interview at any time.


Todd explained that it appeared that appellant understood these warnings, she did not
invoke any of her rights, and she agreed to waive those rights and gave Todd a
statement. 

 In the final two paragraphs of her statement, just above her signature, appellant
concluded, 

Officer Todd asked me if I would give a statement[,] and I wanted to
give a statement because I wanted to tell the truth. I wanted to cooperate
because I know I am in trouble. I told the truth not to get me off, but to
help me with whatever it takes.


I have completed 12 years of high school and did one year in the Army. 
I can read and write the English language. I have read this statement[,]
and it is true and correct to the best of my knowledge. I have given this
statement to Officer Todd of my own free will.Todd noted that appellant never indicated a desire to terminate the interview and that
she did not coerce, promise, or threaten appellant in any manner in order to secure the
written statement. Todd allowed appellant to read over the statement to make
corrections, and appellant did not want to change or to correct anything. Thus,
appellant initialed the bottom of the first and second pages and signed the last page. 

 In her statement to Officer Todd, appellant explained that she had met a
woman, "Shonday," at a club, who told her that she could make $10,000 by taking
"toys" to London. Appellant "knew [that] she wasn't talking about toys," but she
agreed to transport the toys anyway. On February 27, 2006, she went to Shonday's
house, where she was provided with three empty suitcases and airplane tickets. A cab
driver arrived at Shonday's house, gave Shonday the "toy boxes," Shonday placed
appellant's clothes and the toy boxes into the three suitcases, and the cab driver then
took appellant to the airport. 

 Appellant was denied entry into London and returned to Houston, stopping in
Atlanta first. In Atlanta, she "went through Immigration and got [her] luggage." She
subsequently "went through [c]ustoms and they never opened [her] luggage" and
checked her "luggage in . . . for a flight to Houston." Upon arriving in Houston, she
went to the baggage claim area and retrieved only one of her suitcases because the
other two suitcases did not arrive. In Houston, a "guy" met up with her and "walked
away" with her suitcase and that is "when the police started talking to me." 

 On February 29, 2006, at approximately 5:30 a.m., Officer Todd received a
phone call, explaining that the airline had found appellant's two missing suitcases. 
The missing two suitcases were identical to the suitcase that appellant initially had
picked up at the baggage claim. The missing two suitcases, like appellant's first
suitcase, contained bag tags with appellant's name. Also, Todd subsequently
confirmed that three airline bag tag receipts for appellant's trip to London contained
her name. In the two suitcases, Todd found additional bundles of cocaine in game
boxes. Todd stated that, all together, the three suitcases contained approximately
20,000 to 30,000 grams of cocaine, which was worth approximately $3,000,000. 
Moreover, inside one of the three suitcases, police officers recovered a wallet, which
contained appellant's and her daughter's birth certificates, a work identification card
with her name, a credit union account card with her name, and a checkbook with her
name. 

 Houston Police Department Sergeant D. Simerly testified that Officer Todd had
him witness appellant's signing of her written statement. Simerly asked appellant if
"she [had] read the statement, was everything in the statement true and correct[,] . . .
at the beginning of the statement [were] her warnings, d[id] she understand her
warnings, . . . [and] [w]as she signing of her own free will voluntarily[?]" Appellant
replied, "yes," to all of these questions. Also, Simerly believed that appellant
provided this statement freely and voluntarily.

 Prior to trial, appellant filed a motion to suppress evidence, alleging that police
officers took appellant's written statement in violation of the "requirements necessary
under [a]rticle 38.22."

 At the hearing on the motion to suppress evidence, appellant testified that, after
her arrest at the airport, she was read her legal rights, including "[t]he right to remain
silent." However, when asked on direct examination if any of the police officers had
told her that she had a right to remain silent, appellant replied, "no." Appellant also
denied that she was told of her right to an attorney, and she asserted that she had in
fact requested an attorney. Appellant asserted that Officer Todd "pressured" her into
making a statement when she stated, "[W]hoever is going to be helped first needs to
talk first," and "[T]he only way [she] could talk to the judge [was] by a statement." 
 Appellant also asserted that police officers added the legal warnings to her
written statement after she had initialed each page and signed her statement. 
However, appellant conceded that her statement was given "free[ly] and
voluntar[ily]," she actually read the entire statement before signing it, and, if the
warnings "had" actually appeared on the statement, she would not have had any
difficulty in understanding her rights and deciding whether or not to waive those
rights. Although police officers told her that she needed to think about her child
before signing her statement, appellant further agreed that the officers did not threaten
her with anything before she signed her statement. Appellant also agreed that her
written statement had been properly notarized.

 Sergeant Simerly testified at the hearing that appellant's statement contained
the legal warnings, appellant indicated that she wanted to waive her legal rights, and
she freely and voluntarily waived her rights. (4) 

 At the conclusion of the hearing, the trial court denied appellant's motion to
suppress evidence.

Sufficiency of the Evidence

 In her first point of error, appellant argues that the evidence is factually
insufficient to support her conviction because "the undisputed historical facts do not
provide a sufficiently strong logical inference, to the required level of confidence
beyond a reasonable doubt, that [a]ppellant was 'conscious of her possession of the
cocaine and knew what it was.'" Appellant asserts that the State did not prove
"[a]ppellant's knowledge of what she was actually carrying."

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford "due deference" to the jury's determinations. Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a
jury is in the best position to pass on the facts and that we should not order a new trial
"simply because [we] disagree[] with the verdict," it is "the very nature of a factual-sufficiency review that . . . authorizes an appellate court, albeit to a very limited
degree, to act in the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d
at 414. Thus, when an appellate court can "say, with some objective basis in the
record, that the great weight and preponderance of the (albeit legally sufficient)
evidence contradicts the jury's verdict[,] . . . it is justified in exercising its appellate
fact jurisdiction to order a new trial." Id. at 417. 

 A person commits the offense of possession of a controlled substance, namely
cocaine, in an amount of 400 grams or more, if she knowingly or intentionally
possesses the controlled substance in the prescribed amount, by aggregate weight,
including adulterants or dilutants. See Tex. Health & Safety Code Ann. §§
481.102(3)(D) (Vernon Supp. 2007), 481.112 (Vernon 2003). To prove possession
with intent to deliver, the State must prove that the defendant (1) exercised care,
custody, control, or management over the controlled substance, (2) intended to deliver
the controlled substance to another, and (3) knew that the substance in her possession
was a controlled substance. Id. §§ 481.002(38) (Vernon Supp. 2007), 481.112(a);
Parker v. State, 192 S.W.3d 801, 805 (Tex. App.--Houston [1st Dist.] 2006, pet.
ref'd). "Possession" is "a voluntary act if the possessor knowingly obtains or receives
the thing possessed or is aware of [her] control of the thing for a sufficient time to
permit [her] to terminate [her] control." Tex. Penal Code Ann. § 6.01(b) (Vernon
2003). 

 When the State relies on circumstantial evidence to prove a "knowing"
possession case, the State must affirmatively link a defendant to the contraband in
such a manner that one could reasonably conclude that the defendant knew of the
contraband's existence and exercised control over it. Brown v. State, 911 S.W.2d
744, 748 (Tex. Crim. App. 1995). The evidence used to prove possession can be
direct or circumstantial. See id. Whether direct or circumstantial evidence is used,
the State must establish that the defendant's connection with the substance was more
than just fortuitous. Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex. Crim. App.
2005). However, in determining whether the defendant knew that she possessed
cocaine, the jury is allowed to infer the defendant's knowledge from her acts,
conduct, remarks, and from the surrounding circumstances. See Ortiz v. State, 930
S.W.2d 849, 852 (Tex. App.--Tyler 1996, no pet.); Menchaca v. State, 901 S.W.2d
640, 652 (Tex. App.--El Paso 1995, pet. ref'd); see also Gutierrez v. State, 628
S.W.2d 57, 60 (Tex. Crim. App. [Panel Op.] 1980) (concluding that jury could
reasonably infer from independent facts and circumstances that defendant knew of
drug's existence), overruled on other grounds, Chambers v. State, 711 S.W.2d 240
(Tex. Crim. App. 1986).

 In support of her argument that the evidence is factually insufficient to support
her conviction, appellant relies upon Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App.
2000). In Johnson, a jury found the defendant guilty of the offense of aggravated
sexual assault, and the Texas Court of Criminal Appeals held that the Thirteenth
Court of Appeals properly conducted its factual sufficiency review in reversing the
defendant's conviction by applying the "insufficient evidence" prong encompassed
in a civil factual sufficiency review. Id. at 3, 10-11. Thus, the court held that, as in
the civil context, a court of appeals can find, in the criminal context, that the evidence
is factually insufficient if "the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination." Id. at 11. Appellant asserts that the evidence
here is factually insufficient because "the collective logical force of all the
circumstances is too weak to prove the guilt of inference--knowing possession." 
However, the overwhelming circumstantial evidence strongly supports the jury's
implied finding that appellant knowingly possessed cocaine. See Mahmoudi v. State,
999 S.W.2d 69, 71, 74 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd) (finding
circumstantial evidence was factually sufficient to establish that defendant knowingly
possessed cocaine in unopened package when package was addressed to defendant
and his company, defendant signed for package, and evidence showed that defendant
received and shipped numerous "breadmakers" and, unopened package contained
breadmaker used to conceal cocaine). 

 Here, viewing all of the evidence neutrally, Officer Todd conceded that
appellant's behavior when she approached her at the baggage claim was just as
consistent with innocent behavior as with criminal behavior. It is also true that
appellant did not expressly admit to knowing that her three suitcases contained
cocaine. However, when Officer Todd approached appellant after she had retrieved
her first suitcase, appellant was "nervous." See Hypolite v. State, 985 S.W.2d 181,
189 (Tex. App.--San Antonio 1998, no pet.) (concluding that defendant's
nervousness after police officers in airport stopped defendant with suitcase, supported
jury's implied finding that defendant knowingly possessed drugs in his suitcase). 
Appellant asserts that because she was not "shocked" when police officers discovered
the cocaine, she must not have had knowledge of the cocaine's existence in her
suitcase. However, lack of surprise or concern "can suggest the knowledge of the
presence of contraband." Bethancourt-Rosales v. State, 50 S.W.3d 650, 655 (Tex.
App.--Waco 2001, pet. ref'd); see United States v. Del Aguila-Reyes, 722 F.2d 155,
158 (5th Cir. 1983). The suitcase's tag bore appellant's name and, inside of the
suitcase, police officers found cocaine and female clothing. Also, after police officers
found appellant's second and third suitcases, which appellant had been unable to
claim upon her arrival in Houston because the airline had misplaced them, they
discovered that these suitcases contained cocaine as well, and, in one of the suitcases,
they found documentation with appellant's name. The two suitcases' tags also bore
appellant's name.

 Appellant also provided her written statement, in which she explained that,
although "Shonday" had told appellant that she would be transporting "toys,"
appellant knew that "she was not talking about toys." See Del Aguila-Reyes, 722 F.2d
at 157-58 (concluding that "jury could infer that any professed lack of knowledge of
the cocaine on [defendant's] part which was based on [particular] aspect of the
venture, was evidence of 'deliberate ignorance'"). We conclude that the evidence is
not so obviously weak such that the verdict is clearly wrong and manifestly unjust,
or that the proof of guilt is against the great weight and preponderance of the
evidence. Accordingly, we hold that the evidence is factually sufficient to support
the jury's implied finding that appellant "knowingly" possessed with intent to deliver
a controlled substance, namely, cocaine. See Johnson, 23 S.W.3d at 11 (reasoning
that proof of guilt must be so obviously weak so as to undermine confidence in jury's
determination); Pack v. State, 223 S.W.3d 697, 700 (Tex. App.--Texarkana 2007,
pet. ref'd) (noting that court of appeals must reach high level of skepticism about
jury's verdict before second-guessing it).

 We overrule appellant's first point of error.

Admission of Statement

 In her second point of error, appellant argues that the trial court erred in
denying her motion to suppress her written statement because it "did not contain a
written waiver of her rights" that substantially complied with article 38.22 of the
Texas Code of Criminal Procedure. 

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling
on a question of the application of law to facts, we review the evidence in the light
most favorable to the trial court's ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). At a suppression hearing, the trial court is the sole and exclusive
trier of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at 281. 
Accordingly, the trial court may choose to believe or to disbelieve all or any part of
the witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

 In reviewing a trial court's ruling, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather than
evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996). However, this general rule is inapplicable when the parties consensually
relitigate the suppression issue during the trial on the merits. Id. When the State
raises the issue at trial either without objection or with the defense's subsequent
participation in the inquiry, the defendant has made an election to reopen the
evidence, and consideration of the relevant trial testimony is appropriate in our
review. Id. In the instant case, because appellant fully participated in the relitigation
of the issue through cross-examination during trial, we consider Officers Simerly's
and Todd's trial testimony in our review of the trial court's suppression ruling. See
id.

 Texas Code of Criminal Procedure article 38.22, section 2, provides,

No written statement made by an accused as a result of custodial
interrogation is admissible as evidence against him in any criminal
proceeding unless it is shown on the face of the statement that:


(a) the accused, prior to making the statement, either received from
a magistrate the warning provided in [a]rticle 15.17 of this [C]ode
or received from the person to whom the statement is made a
warning that:


 (1) he has the right to remain silent and not make any
statement at all and that any statement he makes may be
used against him at his trial;


 (2) any statement he makes may be used as evidence against
him in court;


 (3) he has the right to have a lawyer present to advise him
prior to and during any questioning;


 (4) if he is unable to employ a lawyer, he has the right to have
a lawyer appointed to advise him prior to and during any
questioning; and


 (5) he has the right to terminate the interview at any time; and


 (b) the accused, prior to and during the making of the statement,
knowingly, intelligently, and voluntarily waived the rights set out
in the warning prescribed by [s]ubsection (a) of this section.


Tex. Penal Code Ann. art. 38.22, § 2(a)-(b) (Vernon 2005). Warnings provided in
a voluntary statement are sufficient to comply with the requirements of article 38.22
if they substantially comply with the requirements of that article. Nonn v. State, 41
S.W.3d 677, 679 (Tex. Crim. App. 2001). A warning that conveys on the face of the
statement, in only slightly different language, the exact meaning of the statute is
sufficient to comply with the statute. Penry v. State, 691 S.W.2d 636, 643 (Tex.
Crim. App. 1985); Eddlemon v. State, 591 S.W.2d 847, 850 (Tex. Crim. App. [Panel
Op.] 1979). 

 In Garcia v. State, the Texas Court of Criminal Appeals concluded that the
written warnings provided to the defendant substantially complied with article 38.22,
even though the defendant was not provided with the warning contained in section
2(b) of article 38.22. 919 S.W.2d 370, 385-87 (Tex. Crim. App. 1996). The court
cautioned that the "clearly preferable practice" is for the following language from
section 2(b) to be included adjacent to a defendant's signature on his statement: "I
knowingly, voluntarily[,] and intelligently waived the rights described above before
and during the making of this statement." Id. at 387. However, the court found that,
"though a close call, [defendant,] on the face of his voluntary statement, knowingly,
voluntarily[,] and intelligently waive[d] his [s]ection 2(a) rights in a manner sufficient
to comply with the legislature's intent when it enacted [s]ection 2(b)." Id. The court
explained that the defendant had been told his legal rights under Miranda (5) before he
made his statement, he placed his initials beside each of section 2(a)'s warnings at the
top of his written statement, he signed each page of his statement, and the statement
contained "additional language" next to his signature, which was evidence of waiver,
stating that the defendant read each page, certified the authenticity of his statement,
agreed that he did not request an attorney or ask to cease providing his statement, and
agreed that he was not told what to say in his statement. Id. at 384-86. 

 In support of her argument that the failure to include section 2(b)'s warning on
her written statement did not substantially comply with article 38.22, appellant relies
upon Williams v. State, 84 S.W.3d 243 (Tex. App.--Tyler 2002), vacated, No. PD-0322-02 (Tex. Crim. App. June 26, 2002). (6) However, Williams is not applicable here. 
In Williams, the court of appeals found that the statement, "I was further advised that
prior to and during the making of a statement that I had to knowingly and voluntarily
waive (Give up) the rights that I was advised that I had as set out above," did not
substantially comply with section 2(b). Id. at 247. The court reasoned that "advised"
only means "informed or notified" and "nothing" addressed "whether [the defendant]
intentionally, knowingly, and voluntarily relinquished the rights of which he was
informed or notified in the warning." Id. at 248. The court distinguished Garcia on
the basis of the Texas Court of Criminal Appeals's "heavy reliance" on "additional
language," i.e., the language other than the legal rights next to the defendant's
signature which evidenced waiver. Id. at 247. The Twelfth Court of Appeals
concluded that the Miranda warnings given to Williams were not adequate because
"[t]he only suggestion on the face of the statement that [the defendant] possibly
waived his rights is that he in fact gave the statement." Id. at 249. Thus, the court
"found no affirmative recitation that [the defendant] waived his rights and no
language . . . . at all relating to the issue of whether [the defendant] waived his
rights." Id. 

 Other courts of appeals have found voluntary waiver in cases where section
2(b)'s warning was not contained in the defendant's written statements. See
Villarreal v. State, 61 S.W.3d 673, 678-79 (Tex. App.--Corpus Christi 2001, pet.
ref'd) (concluding that defendant waived rights even though no additional language
was in written statement); Gutierrez v. State, 945 S.W.2d 287, 290 (Tex. App.--San
Antonio 1997, no pet.) (finding waiver because additional language was similar to
additional language in Garcia). Moreover, unlike in Williams, appellant's statement
contains additional language which relates to waiver of her rights when she stated,
"I wanted to tell the truth," "I wanted to cooperate," "I have read this statement and
it is true and correct to the best of my knowledge," and "I have given this statement
to Officer Todd of my own free will."

 Here, the appearance of appellant's initials on each page and her signature on
the final page evidence that appellant read and understood the five written warnings
in accordance with article 38.22. Cf. Garcia, 919 S.W.2d at 386 (noting that initials
and signature are evidence of waiver of legal rights). In fact, appellant admitted at
trial and in her written statement that she had read the statement. Second, appellant's
signature appears after the phrase "I have given this statement to Officer Todd of my
own free will." This "additional language" is evidence of "reiteration that [she]
understood [her] rights and knew what [she] was doing when [she] gave [her]
statement." See id. (stating that "additional language" is evidence of waiver). The
additional language demonstrates not only that she knew and understood her section
2(a) rights, but that she knowingly and voluntarily waived those rights on her own
"free will" because she wanted to "tell the truth" and "cooperate." Third, the title of
appellant's statement, "VOLUNTARY STATEMENT OF PERSON IN CUSTODY,"
is further "additional language" that appellant voluntarily waived her rights. See id. 
Fourth, prior to the time that appellant made her statement, Officer Todd orally and
in writing informed her of her rights under Miranda. See id. (reasoning that
administration of Miranda rights is evidence of waiver). At trial, appellant, at one
point, agreed that she had been informed of her rights under Miranda, even though
she argues otherwise on appeal. Fifth, Officers Simerly and Todd testified that
appellant voluntarily waived her rights. Sixth, appellant conceded that "if" her
written statement had contained the five written warnings before she signed the
statement, she would not have had difficulty understanding and deciding whether or
not to waive her rights. 

 Finally, the trial court, following the hearing on her motion to suppress
evidence, concluded, in its findings of facts and conclusions of law, that appellant,
after Officer Todd informed her of her Miranda rights, understood and waived her
enumerated rights on the face of the statement and that the State substantially
complied with the requirements of section 2(b) in article 38.22. The trial court also
found that appellant was "not a credible witness," that her testimony was "not true
that the written warnings were missing from her [s]tatement at the time she signed the
document," and that the State did not violate her Miranda rights. In Garcia, the
Texas Court of Criminal Appeals noted that "factual determinations made by the trial
court at a hearing on a motion to suppress evidence shall not be disturbed on appeal
if those findings are supported by the record." Id. at 387. Here, the trial court
obviously chose not to believe appellant. As in Garcia, "[w]e find no abuse of
discretion by the trial court." See id. Accordingly, we hold that the trial court did not
err in denying appellant's motion to suppress her written statement.

 We overrule appellant's second point of error.






Conclusion

 We affirm the judgment of the trial court.

 




 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Health & Safety Code Ann. § 481.112(f) (Vernon 2003).
2. See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).
3. Drug Enforcement Administration Special Agent J. Calhoun testified that appellant
freely and voluntarily gave her consent, even after Officer Todd explained that
appellant did not have to grant consent.
4. Officer Todd also testified at the hearing that she told appellant of her legal rights
before appellant gave her statement and that Todd again advised appellant of her legal
rights by putting them on the face of appellant's statement. 
5. See Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630 (1966).
6. The Texas Court of Criminal Appeals vacated the court of appeals's original opinion
and remanded the case to the court of appeals with instructions to dismiss for lack of
jurisdiction. See Williams v. State, No. 12-01-00126-CR, 2002 WL 1822326, at *1
(Tex. App.--Tyler Aug. 7, 2002, no pet.) (per curiam) (mem. op., not designated for
publication).